15765

ALMA REED v. J. C. LEMACKS

(35 S. E. (2d), 34)

*Mr. Edwin J. Blank,* of Charleston, S. C., Counsel for Appellant, cites:

*Messrs. Padgett & Moorer,* of Walterboro, S. C., Counsel for Respondent.

August 7, 1945.

MR. ASSOCIATE JUSTICE TAYLOR delivered the Opinion of the Court.

This case comes to this Court by way of appeal from Colleton County where on *ex parte* petition of J. C. Lemacks, dated 22 May, 1941, a paper dated 28 September, 1928, purporting to be the last will and testament of Laura B. Lemacks, who had died on 20 May, 1941, was admitted to

probate in common form by the Probate Court for Colleton County on 28 May, 1941; and at the same time, letters testamentary were issued to J. C. Lemacks as executor of the said will.

On petition of Alma Reed, verified by her on 9 April, 1942, which asserted that the deceased at the time of her death was a resident of Charleston County, the Probate Judge for Colleton County, under order dated 15 April, 1942, issued a rule to show cause directed to J. C. Lemacks, requiring him to show cause on the 6th of May, 1942, why the order admitting the will to probate should not be revoked, and why a certain certificate of the three attesting witnesses attached to the said will should not be ordered withdrawn; and filing thereof, cancelled and refused.

To this petition and rule to show cause, J. C. Lemacks filed notice that a motion would be made at the hearing to discharge the rule to show cause, on the ground that the record admitting the will to probate does not show any want of jurisdiction or jurisdictional defect, and that the petitioner could not contest the jurisdiction of the Court, insofar as it depends on the place of residence, except in an appeal from the Probate Court in the original case or proceeding; and further that the petitioner had no standing in Court, she being a stranger to the proceedings.

I. A. Smoak, who was then Probate Judge, granted the motion to dismiss and refused to take any testimony, holding that under Sec. 221 of the Code, the jurisdiction of the Probate Court could not be attacked insofar as it depends upon the place of residence, except by an appeal, the want of jurisdiction not appearing upon the record. On appeal to the Circuit Court his order was confirmed. An appeal was then taken to the Supreme Court from this order resulting in a reversal and remanding of the case with directions that the Probate Court should hear all the parties

and receive all competent, proffered evidence, and determine the issues with the interested parties. See *Reed v. Lemacks,* 204 S. C., 26, 28 S. E. (2d), 441.

Thereafter, the Hon. O. H. Rhodes, Judge of Probate for Colleton County, who was the successor in office to Probate Judge I. A. Smoak, conducted hearings, received the testimony and exhibits, and filed his order dated 30 May, 1944, discharging the rule. From this order an appeal was duly taken to the Circuit Court and by consent was heard before Judge Johnson, Judge of the 14th Circuit, Allendale, who filed his order dated 25 November, 1944, overruling all the exceptions and confirming the order of Probate Judge Rhodes.

Appellant now comes to this Court upon numerous exceptions, 46 to be exact, but they raise only one question: Was the deceased a resident of Charleston or Colleton Counties?

When this case was reversed by this Court at the prior hearing it used the following language:

"We are constrained to hold that appellant's petition in the Court of Probate for Colleton County requires an investigation by the Court of the pertinent facts alleged, and that the Court should fully hear the parties, receiving all competent, proffered evidence, and determine the issues with the interested parties before it, and any of the latter considering himself aggrieved will then be subject to the requirement of Section 230 with respect to the time and manner of appeal to the Court of Common Pleas.

"The judgment of the Circuit Court is reversed and the case remanded to the Probate Court of Colleton County for further proceedings consistent herewith." *Reed v. Lemacks,* 204 S. C., 26, 28 S. E. (2d), 441, 445.

As a result of which the present Probate Judge after hearing the parties and receiving evidence found as a matter of fact that the testatrix at the time of her death was a resident of Colleton County, S. C., and therefore her will was properly admitted to probate in said County. He refused to cancel, revoke or annul the certificate of the three attesting witnesses, denied the prayer of the petition and discharged the rule.

The burden of contention of appellant is that the testatrix having been committed to the State Hospital by the Judge of Probate of Charleston County, the lunacy proceedings had there was a judicial determination that she was a resident of Charleston County and therefore no other Probate Court had the right to admit her will to probate; that the question of residence thereby became *res judicata* and therefore the Judge of Probate of Colleton County was without jurisdiction to admit her will to probate in that County after her death.

The elements of *res judicata* are stated in *Johnston-Crews Co. v. Folk,* 118 S. C., 470, at page 478, 111 S. E., 15, at page 17, where the Court said:

"The following have been declared to be the essential elements of *res adjudicata:* (1) Identity of the parties; (2) identity of the subject-matter; (3) an adjudication in the former suit of the precise question sought to be raised in the second suit. *Hart v. Bates,* 17 S. C., 35."

In the first place, Mr. J. C. Lemacks was not a party to those proceedings. In the second place, the identity of the subject-matter there and here is different. The subject-matter in the lunacy proceeding was the mental status of the alleged lunatic. Here the subject-matter is the estate of the testatrix. And this Court is constrained to believe there was no adjudication in the lunacy proceedings that Mrs. Lemacks was a resident of Charleston County,

the Probate Court merely adjudging that she was a resident of South Carolina. The precise question was never adjudicated there.

It is contended, however, that the Judge of Probate of Charleston County inferentially had to determine that she was a resident of Charleston County, otherwise he would not have had jurisdiction in the lunacy proceeding.

Examination of the statutes shows that this is an erroneous assumption. It is true that, under Section 6229 of the Code, relatives or friends of the alleged lunatic should apply to the Judge of Probate "of the county in which such person resides, make the affidavit in the manner and form required by the board of regents." If relatives or friends choose to disregard the law it certainly should not be conclusive against the lunatic or her estate.

However, under Section 6227 of the Code, the superintendent of the hospital is authorized to receive an emergency patient without an order of the Judge of Probate and detain the person for not more than ten days when two licensed physicians certify that the person is violently and dangerously insane or for other reasons is in urgent need of treatment. During this ten-day period the person applying for such admission should cause the alleged lunatic to be duly committed or else removed from the hospital.

Under Section 6228 the superintendent is authorized to admit patients on their own voluntary application where in his opinion such patient is competent to make the application.

Under Section 6232 it is prescribed that no person shall be admitted from any county unless it is shown in the application "that such person is a legal resident of this State at the time such application is made."

It is apparent that the General Assembly was not so much concerned with the particular county residence within South

Carolina as it was concerned with the person being a legal resident of the state.

The commitment of Mrs. Lemacks to the State Hospital by the Probate Court of Charleston County in 1925, if it is to be considered a judgment, was merely an adjudication of her insanity and not of her residence. In 28 *Am. Jur.,* at page 662, it is stated:

"An inquisition of lunacy cannot determine any issue other than the status of the alleged lunatic. It cannot settle questions pertaining to property rights."

"The findings of nonjudicial bodies or officials upon the question of lunacy, or mental condition generally, do not, in the absence of statutory provisions to the contrary, constitute a judgment or have the effect of a judgment rendered in civil proceedings. The finding of a board of commissioners of insanity that a person is insane and a fit subject for treatment in the hospital for the insane generally has no bearing upon his legal capacity. The effect of such a finding is to admit one to the asylum for treatment, and an order, made thereon, for his commitment to such an institution operates like a judgment, to the extent that it will justify the restraint of his person; but the finding is not entitled to the faith and credit which is accorded the judgment of a court, since it is clear that the board does not act in a judicial capacity."

Under Section 6227 of the Code, the Judge of Probate, upon the certificate of two physicians, could send an emergency case to the State Hospital for ten days whether or not such person was a resident of Charleston County. The record upon which he acted on the form prescribed by the Board of Regents where "specified interrogatories" were answered showed upon its face that Mrs. Lemacks was a resident of Colleton County. Mrs. Reed (Then Mrs. Lilienthal), who

filed the petition with the Probate Court, answered the questions as follows:

"Is she a legal resident of South Carolina? Yes.

"If so, what county, city or town? Colleton County."

In his order of commitment the Judge of Probate did not find that she was a resident of Charleston County but merely found that she was a resident of South Carolina.

In his order he found: "and being satisfied that the above alleged insane person is insane, a citizen or *bona fide* resident of South Carolina", etc.

In 32 C. J., 633, in discussing venue in lunacy proceedings it is stated:

"The failure to bring the proceedings within the proper venue, when such is determined by the place of residence, does not render them void, the error being in practice and not jurisdictional."

In the petition, in the exceptions, and in argument the contention is reiterated time and again that the Probate Court for Charleston County, having first obtained jurisdiction by adjudging Mrs. Lemacks insane, should retain jurisdiction even after her death in the settlement of her estate. Such rule of comity between courts does not apply here. The Probate Court of Colleton County is not attempting to interfere with the determination by the Judge of Probate of Charleston County that Mrs. Lemacks was insane when she was admitted to the State Hospital. The sole subject-matter in that proceeding was the mental status of Mrs. Lemacks. That proceeding had nothing whatsoever to do with the administration of her estate after her death. Two entirely different subject-matters are involved. The code provision on the subject deals only with the estate of a deceased person. Section 220 of the Code is as follows:

"When any probate court shall have first taken cognizance of the settlement of the estate of a deceased person, such court shall have jurisdiction of the disposition and settlement of all the personal estate of such deceased person to the exclusion of all other probate courts."

From 28 *Am. Jur.*, at page 662:

"An inquisition of lunacy cannot determine any issue other than the status of the alleged lunatic. It cannot settle questions pertaining to property rights."

In no event can it be said that order of commitment was an adjudication of anything other than her sanity.

This Court in its first opinion in this case directed that the Judge of Probate fully hear the parties and receive all competent proffered evidence on the question of residence. This he did and found that the testator was a resident of Colleton County. A review of the record in this case shows that there is a great abundance of evidence to support the findings of fact by the Probate Judge which was concurred in by the Circuit Court; therefore the judgment appealed from is affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES STUKES and OXNER concur.

MR. ASSOCIATE JUSTICE FISHBURNE disqualified.